## Richmond Building Association, garnishee, *versus* Richmond Building Association, to use, etc.

A., being a member of a building association, borrowed money upon his stock, and gave a mortgage upon certain premises whereof he was seised. He subsequently applied to B. for further advances on the property. C., B.'s counsel, advised that there was no incumbrance on property, whereupon B. advanced the money and took what he supposed to be a first mortgage. Subsequently, the building association instituted suit on its mortgage, and C., becoming thus aware of its existence and considering himself personally liable to his client, B., solicited the association to enter up A.'s bond and to issue an attachment against his building association stock. This was done, and moreover, A. agreed with C. to contribute to what he should lose in the matter. C. then procured a statement from the association of the amount due on A.'s mortgage, being the amount of the original principal, with interest, less the sums already paid by installments on stock and otherwise. He paid this sum, which included no premiums nor fines, and then took an assignment of the judgment against A. on the bond, the attachment execution against A.'s shares being still open and pending. This assignment he testified he procured in order "to hold a rod" over A. to force him to keep his contract. Afterwards, C. pressed the attachment and the same came on for trial, whereupon the court directed a verdict for the plaintiff. *Held,* that this was error, that it should have been left to the jury to determine the true nature of the transaction between C. and the association, and the understanding of those parties, and whether it was consistent with said understanding and agreement for C. to press the attachment.

March 24th and 27th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas No. 4, of *Philadelphia county :* Of January Term 1882, No. 241.

Attachment execution by the Richmond Building and Loan Assocation to the use of J. C. McCaffrey against Peter Donohue, defendant, and the Richmond Building and Loan Assocation, garnishee.

On the trial, before ELCOCK, J., the facts of the case appeared to be as follows :

Peter Donohue was, in 1871, the holder of fifteen shares of stock in the Richmond Building and Loan Association, first

[Richmond Building Asso. *v.* Richmond Building Asso., to use, &c.]

series, and, in October of that year, received a loan of $200 a share, in all $3,000, for which he executed a bond and mortgage of a property on Eleventh street and made transfer of his shares to the association in the usual manner.

Subsequently he took four shares in the fifth series of stock and borrowed the further sum of $800 upon mortgage of the same property.

In 1878 Donohue being greatly in arrear upon both mortgages, the association foreclosed the second mortgage, and the property was bought in by Burke, a nephew of Donohue's, in his interest, for $1,500.

Burke then procured a loan of $1,800 from the Francis Cooper Building Association, with which to pay for the property, and McCaffrey was employed by the latter association to examine the title and prepare a mortgage from Burke to them, which should be a first lien on the property.

McCaffrey prepared the deed from the sheriff to Burke and the mortgage from Burke to the association, and passed the latter to them as a first incumbrance, though, in fact, the sheriff's sale had been made subject to the mortgage of $3,000, held by the Richmond Building Association, that mortgage not having been discharged by the sale.

Subsequently the Richmond Building Association directed Joseph M. Pile, Esq., as its counsel, to foreclose the first mortgage for $3,000, and proceedings were accordingly instituted thereon. McCaffrey then discovered his error in overlooking this mortgage, and considering himself liable to the Francis Cooper Building Association in consequence, called upon Mr. Pile and desired the Richmond Building and Loan Association to make some concessions to him and he would endeavor to make settlement.

Donohue, the defendant, had some means, and at the request of McCaffrey, a judgment was entered upon the bond accompanying the $3,000 mortgage, and an attachment execution was issued against Donohue's stock in the Richmond Building and Loan Association, said association being summoned as garnishee. A fi. fa. was also issued against Donohue's goods, and a certain sum raised in this way, which was paid to the Richmond Building and Loan Association. Subsequently, McCaffrey, Burke and Donohue met, and the two latter agreed to contribute to reimburse McCaffrey for what he should lose.

A statement was then prepared by Mr. Pile, as counsel for the Richmond Building and Loan Association, of the amount remaining due by Donohue upon the $3,000 mortgage. Deducting the amounts already paid thereon, the amount realized from the sale of Donohue's goods and other credits, the balance due appeared to be $962. The association, in consideration of McCaffrey's error, charged no fines and took no premiums.

[Richmond Building Asso. *v.* Richmond Building Asso., to use, &c.]

McCaffrey paid the amount in three sums, the last being paid August 11th 1881. He then asked for an assignment of the judgment on the bond against Donohue, and the same was accordingly assigned to him. In regard to this transaction, McCaffrey testified as follows:

" I asked for an assignment of the judgment, and the reason I gave was, that the assignment was to aid me in the collection of what I was to get from Burke, that is, to hold a rod over the property; Mr. Bryant, who acted for Mr. Pile in marking this judgment to my use, asked me at the time of the marking, what I was going to do with the attachment execution; I replied I did not know yet."

McCaffrey filed interrogatories to the Richmond Building and Loan Association, as garnishees in the attachment against Donohue's stock. An answer was filed, a plea pleaded, and the cause put at issue.

Defendants requested the court to charge as follows :—

" If the jury find that in the settlement made between the Richmond Building Association and McCaffrey, of August 1881, the amount paid on the stock was credited, then by that act, the stock was cancelled, and your verdict should be for the defendants." Refused.

The court charged as follows:

" The mortgage in this case was made by Peter Donohue to the Richmond Building Association; the property was afterwards sold under a second mortgage, subject to the first—the title was passed by McCaffrey—he certified that no mortgage was on the premises, and in consequence, he had to pay the mortgage.

" He paid part money and was credited with the amounts which had been paid on the stock.

" This was paid in a settlement made between McCaffrey and the counsel for the association. McCaffrey was allowed the amount paid on the stock, paid the balance, and took an assignment of the mortgage and judgment, and standing in the shoes of Donohue, he claims the stock.

[" The attachment passed with the assignment of the judgment.] It was issued for the purpose of holding the stock.

[" Unless there was some action by the Building Association to cancel the stock, it is subject to all the rights of Donohue.]

" It may become important to know the value of the stock. Any borrower has the right to cancel his mortgage with it, and as this series of stock had appreciated to its par value of $200 in January 1880, you will deduct from that amount the sum which was due upon it, to wit, $1,300—and also the sum of $930, credited in the settlement, and award plaintiff, by virtue:

4 Outerbridge.—13

[Richmond Building Asso. *v.* Richmond Building Asso., to use, &c.]

of his attachment, the difference between these two sums—$2,230, and the par value of the stock, viz., $770."

Verdict and judgment for the plaintiff.  Defendants thereupon took this writ assigning for error the refusal of the court to affirm their point, the portions of the charge enclosed in brackets, and the instruction of the court to find for the plaintiff.

*G. W. Thorn,* for the plaintiffs in error.—It is clear in this case that McCaffrey had no right to push the attachment.  In the settlement the value of Donohue's stock had already been applied on account of the debt : Reed *v.* Penrose, 12 Casey 214 ; Bank *v.* Little, 8 W. & S. 207 ; Penrose *v.* Erie Canal Co., 3 Phila. 198 ; Rushton *v.* Rowe, 14 P. F. S. 63.

It is quite true that the payments on the stock are not, ipso facto, payments on the mortgage, but where there is an act of appropriation by either the mortgagor or the association, as was said in Spring Garden *v.* Tradesmen's Assn., 10 Wright 493, the stock payments may be so applied.  And certainly the attachment under the rulings would be a sufficient appropriation, and the attaching creditor, under the circumstances of this case, can be in no better condition than Donohue, if the settlement had been made directly instead of indirectly by him.

*E. C. Quin,* for the defendant in error.—The association having received the full price they agreed to accept for the assignment of the judgment is estopped from denying the title thereto : Flynn *v.* Allen, 7 P. F. S. 482 ; Littlefield *v.* Perry, 21 Wall. 205 ; Frazer *v.* Hilliard, 2 Strob. 309 ; Moore *v.* Byrum, 10 S. C. 452.

The stock of Donohue was subject to attachment by the association : North American Building Ass'n *v.* Sutton, 11 Casey 463 ; The Spring Garden Building Association *v.* The Tradesmen's Building Association, 10 Wright 493 ; Early's Appeal, 7 W. N. C., 184 ; Economy Building Association *v.* Hungerbuehler, 9 W. N. C. 218.

This last case is in every essential particular like the present.

The next position assumed by the plaintiff in error is that the sale to McCaffrey was a matter of compromise.  If so, instead of being a justification for repudiating it would be an additional reason why the building association should be compelled to adhere to their compromise.  Compromises are favored in the law, and courts uniformly uphold them, whether the right is on the one side or the other : Chamberlain *v.* Mc-

Churg, 8 W. & S. 31 ; Mc Coy v. Hutchinson, 8 W. & S. 66 ;
Rice v. Bixler, 1 W. & S. 445.

The assignment of the judgment carried with it to the as-
signee all the rights incident thereto, among them that of
proceeding with the attachment : Cathcart's Appeal, 1 Harris
416 ; McCall v. Lenox, 9 S. & R. 304 ; Donley v. Hays, 17
S. & R. 402 ; Bank v. Fordyce, 9 Barr 275 , Roberts v. Hal-
stead, 9 Barr 34 ; Betz v. Heebner, 1 P. & W. 280 ; Mehaffy
v. Share, 2 P. & W. 361 ; Bank v. Fordy, 1 Burr 454 ; Fitz-
simmons' Appeal, 4 Barr 248 ; Dubois' Appeal, 2 Wright 231 ;
Curtis v. Tylor, 9 Paige 432 ; Crow v. Vance, 4 Clarke 434 ;
Wilson v. Bowden, 26 Ark. 151 ; Forwood v. Dehoney, 5 Bush
174 ; Coffing v. Taylor, 16 Ill. 457 ; Belden v. Meeker, 2 Lan-
sing 470 ; Perry v. Roberts, 30 Ind. 244 ; Parmelee v. Dann,
23 Barb. 461 ; Jackson v. Blodget, 5 Cow. 202 ; Pattison v.
Hull, 9 Cow. 747 ; Gander v. Coe, 5 Cal. 230 ; Brown v. Scott,
25 Cal. 190 ; Bolen v. Crosby, 49 N. Y. 183 ; Ritch v. Eichel-
berger, 13 Fla. 169.

Donohue was never consulted and never gave his assent
to any such appropriation as is contended for by the plaintiff in
error : Martin v. Draher, 5 Watts 544 ; Moorehead v. West
Branch Bank, 3 W. & S. 550 ; Logan v. Mason, 6 W. & S. 9 ;
Selfridge v. The Northampton Bank, 8 W. & S. 320 ; Harker v.
Conrad, 12 S. & R. 301 ; Watt v. Hoch, 1 Casey 411 ; Pierce
v. Sweet, 9 Casey 151 ; Pennypacker v. Umberger, 10 Harris
492 ; Greene v. Tyler & Co., 3 Wright 361.

Mr. Justice STERRETT delivered the opinion of the court
October 2d 1882.

In 1871, Peter Donohue borrowed from the Richmond
Building Association $3,000 and secured the same by bond
and mortgage together with an assignment of the fifteen shares
of stock on which the loan was made.    He afterwards obtained
an additional loan secured by a second mortgage on which the
mortgaged premises were sold, and purchased by Burke, a neph-
ew of Donohue.    The testimony tends to prove that at the
time of the sale, McCaffrey, the equitable plaintiff below,
was consulted professionally in regard to the title and advised
his client that the first mortgage was no longer an incumbrance
on the property.    Discovering his mistake in that regard, and
considering himself liable for the amount of the mortgage or
so much thereof as might be unpaid, he endeavored to so
arrange the matter with the association as to lessen the bur-
den as much as possible.    At his request judgment was entered
on the bond, and execution issued thereon against Donohue,
which was afterwards stayed by him.    In like manner the at-

tachment execution, on which the present judgment in his favor is based, was issued for the purpose of securing any interest Donohue might have in the stock held by the association as collateral. Subsequently a settlement was effected, in which the association agreed to accept $962 for its claim. This sum was paid and the judgment was thereupon marked to the use of McCaffrey, by whom the attachment was afterwards pressed to trial and judgment. The testimony, as has been remarked, tended to prove, inter alia, the foregoing facts. It was strenuously contended by the garnishee, plaintiff in error, that as between the association and McCaffrey, the settlement was intended to embrace everything without reservation; that it included any claim he had or might have against the association, directly or indirectly, through the attachment or otherwise; and that the marking of the attachment to his use was merely to enable him to collect from Burke a portion of the amount he had paid to the association in settlement of its claim. The stock on which the $3,000 loan was obtained, was of the first series, and if Donohue's dues therein had not been in arrears from $1,300 to $1,400, as testified to by one of the witnesses, it would have been fully paid up, and, in accordance with the theory as well as the practice of such associations, applied to the payment of his loan and satisfaction of the security given therefor. His default in payment of dues for several years prevented that result, and until the claim of the association for arrearages was satisfied, it clearly had a right to hold and enforce its security. The secretary of the association testified that in the statement he prepared, "for the purpose of settlement with McCaffrey," he credited all that had been paid, in any way, by Donohue on the stock, and charged no fines or premiums. The testimony of McCaffrey himself is, that at his request the solicitor of the association "entered judgment on the bond of Donohue, and issued execution and an attachment thereon." He further says, "Counsel for Donohue called on me to have the fi. fa. stayed; we made an arrangement that I was to take an assignment of the mortgage and bond, and then Burke, the nephew of Donohue and owner of the property, was to pay one half of what I had to pay to the association; he was to pay me in nine years from that date and I was to bear the loss of the other half. . . . I asked for an assignment of the judgment, and the reason I gave, was that the assignment was to aid me in the collection of what I was to get from Burke, that is, to hold a rod over the property."

In view of the testimony referred to, the jury would have been justified in finding the facts as claimed by the plaintiff in error. Indeed, it is difficult to see how they could have

[Sheetz's Appeal.]

done otherwise without disregarding the evidence. It is very apparent that the attachment in execution has been used by McCaffrey for a purpose and in a manner never contemplated either by himself or the association. The judgment was never marked to his use for the purpose of enabling him to turn around and collect back from the Association nearly as much as he had paid in settlement of its claim. Recognizing the personal liability he had incurred, he succeeded in settling the claim of the association on the most favorable terms he could obtain, and in connection therewith he had Burke's agreement to pay him one-half thereof. McCaffrey himself swears that he requested the assignment to aid him in collecting what Burke agreed to pay—" to hold a rod over the property." Why should he be permitted to use it for another and very different purpose?

There was no error in refusing to charge as requested by the garnishee. The verdict did not depend solely on whether the amount paid on the stock by Donohue was credited or not: nor was there any error in charging as set forth in the third specification.

The second, fourth and fifth specifications of error are sustained. Ordinarily, the assignment of a judgment carries with it the right to proceed with any outstanding process issued thereon; but, whether in this case the attachment passed with the assignment of the judgment, in the sense that it might in good faith be enforced against the association, depended on the nature of the transaction, the understanding of the parties.

Under the evidence, that was a question for the jury. The fundamental error, however, was in taking the case from the jury by directing a verdict in favor of the plaintiff below. If they had been permitted to pass upon the testimony the strong probability is that their verdict would have been otherwise.

Judgment reversed and venire facias de novo awarded.